## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE J. MCNARY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-CV-545 SRW |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF

No. 22. Defendant filed a Brief in Support of the Answer. ECF No. 25. The Court has reviewed

the parties' briefs and the entire administrative record, including the transcripts and medical

evidence. Based on the following, the Court will affirm the Commissioner's decision.

## I.      Factual and Procedural Background

On December 27, 2018, Plaintiff Catherine J. McNary protectively filed an application

for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq*. Tr. 86-89, 199-02.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

1

Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 78-85, 90-94, 98-100.

Plaintiff and counsel appeared for a hearing on November 6, 2019. Tr. 27-77. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert Teresa McClain, M.A., C.R.C. *Id*. On January 7, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 8-20. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 196-96. On March 4, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

2

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 19, 2016 through her date last insured of June 30, 2017. Tr. 13. Plaintiff had the severe impairments of "right foot pes planus status-post surgery, valgus deformity of the right ankle status-post surgery, obesity, reduced hearing status-post tympanoplasty with ossicular reconstruction, and degenerative disc disease status-post lumbar fusion." *Id.* Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 15. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] had the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a). However, she could occasionally operate foot controls bilaterally. She could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, as well as stoop, kneel, crouch, and crawl. She could never work at unprotected heights, and could not be exposed to concentrated levels of vibration. Finally, the claimant could work in up to moderate noise levels.

Tr. 15-16. The ALJ found Plaintiff "was capable of performing past relevant work as a Personnel Clerk (DOT 209.362-026) (sedentary and semi-skilled – SVP 4) (actually performed at the

medium exertional level) sedentary as generally performed." Tr. 19. Therefore, the ALJ concluded Plaintiff was not under a disability from March 19, 2016 through June 30, 2017. Tr. 19.

## IV. Discussion

As an initial matter, the Court notes that Plaintiff's insured status is relevant in this case. Plaintiff alleged an onset of disability date of March 19, 2016. Her insured status expired on June 30, 2017. To be entitled to benefits under Title II, Plaintiff must demonstrate she was disabled prior to June 30, 2017. *See* 20 C.F.R. § 404.130. Thus, the relevant period for consideration in this case is from her alleged onset date to her expired status date.

Plaintiff challenges the ALJ's decision by arguing the record was not fully and fairly developed because the ALJ did not obtain additional medical evidence addressing Plaintiff's physical and mental abilities to function in the workplace. ECF No. 22, at 3. As a result, Plaintiff argues the ALJ did not properly evaluate her "exertional limitations and her non-exertional limitations, namely the effects of pain, four (4) surgeries, depression, and possible medication side-effects on her ability to maintain concentration, persistence or pace." *Id.* at 4.

In support of her argument, Plaintiff cites to the Agency's Disability Determination Explanation, dated April 3, 2019, in which Plaintiff was initially denied benefits. *See* Tr. 78-85. Within the Agency's Determination Explanation there are two instances where evidence was described as insufficient. First, the state agency medical consultant, Dr. Daniel Gwartney, M.D., wrote, in relevant part:

> DR. LEVITRE – PODIATRIST – HARDWARE REMOVAL X2 RT HEEL
> 11/17
> INSUFFICIENT EVIDENCE FOR TIME PERIOD NEEDED.

Tr. 82. Dr. Jason Levitre, DPM, was Plaintiff's foot and ankle specialist at Podiatry Associates, Inc. in St. Peters, Missouri.

In a separate section of the Disability Determination Explanation, a second state agency medical consultant, Keith L. Allen, Ph.D., wrote, in part:

ANXIETY DEPRESSION

INSUFFICIENT EVIDENCE TO EVALUATE CONDITION

PC ADDENDUM: C/o "MDD with obsessive compulsive," with reported treatment at SCPA with first visit 12/2018 and f-u 2/2019. This is DIB case with date last insured 6/30/17, with no report seeking/receiving mental health treatment during the time period of this PRTF. AOD 3/19/16. There is insufficient case file information to complete forms.

Tr. 83.

Plaintiff argues the ALJ should have obtained additional medical evidence based on the state consultant's notations of insufficient evidence coupled with the fact that "the record contains significant objective findings, including back surgery, two (2) ankle surgeries and ossicular reconstruction, supporting multiple external and non-exertional impairments, which require a medical opinion to determine Plaintiff's ability to function in the workplace." ECF No. 22, at 6. Plaintiff also argues the ALJ failed to fully develop the record because it did not include treatment notes from her psychologist, Dr. Greg Mattingly, for the relevant period.

In response, the Commissioner argues the ALJ did not err because the record was adequately developed, and the ALJ was able to make a fair and informed decision based on evidence in the record without seeking additional opinions. The Commissioner notes the ALJ considered Plaintiff's activities of daily living, largely unremarkable physical examinations, progress with physical therapy, and controlled mental impairments in order to determine she was able to perform a range of sedentary work with certain defined limitations.

7

### A. The ALJ's Consideration of Plaintiff's Physical Impairments

The ALJ found Plaintiff had the RFC to perform sedentary work with additional postural, manipulative, and environmental limitations. Tr. 15-19. In making this decision, the ALJ found Plaintiff did not have a total disability because there was a "lack of objective evidence showing ambulation difficulties," and Plaintiff could "engage in several typical activities of daily living." Tr. 19.

The ALJ first acknowledged Plaintiff's Function Report where she described difficulties lifting, squatting, bending, standing, walking, sitting, kneeling, hearing, and climbing stairs, as well as issues with memory and concentration. Tr. 16, 273-83. Plaintiff stated she was unable to lift more than five to ten pounds and could not walk more than a couple of blocks before needing to rest. She reported consistent pain, limited range of motion in her back, neuropathy in her right foot, low energy, and difficulties sleeping. In reviewing her Function Report, the ALJ noted it did not appear her allegations were limited to the relevant time period of March 19, 2016 to June 30, 2017. Tr. 16. For example, in the "Remarks" section, Plaintiff described symptoms she was presently experiencing when she filled out the Function Report in February of 2019 and reported a heart attack she suffered in August of 2018. Tr. 280.

At the November 6, 2019 hearing, the ALJ explained the relevant date range to Plaintiff. Tr. 16. Plaintiff then testified that from the time of onset to the date last insured she was able to drive regularly, except for brief periods when was recovering from her back or foot surgeries; was able to shop at a grocery store twice per week with her husband, but she used a motorized cart; attended church twice weekly; and flew to Florida for a one-week family vacation. Tr. 16-17, 37-39, 59-61. Other than preparing dinner, Plaintiff stated she did not do household chores or

yardwork. Tr. 17, 56-57. Plaintiff testified she was unable to work due to right foot, right leg, and back pain from prolonged sitting or standing. Tr. 16, 50, 52. She described her post-surgery back pain as a five or six out of ten, and her post-surgery foot pain as a nine out of ten.[2] Tr. 17, 53-54. Plaintiff testified she used a scooter for ambulation from October to December of 2016, and crutches from January to May of 2017. Tr. 17, 54. Plaintiff testified her most comfortable position was lying down, and she maintained that position 60% to 70% of the day.[3] Tr. 17, 63.

The ALJ then considered Plaintiff's medical record. The ALJ cited to Plaintiff's March 25, 2016 left L5/S1 transforaminal lumbar interbody fusion ("TLIF") surgery, resulting from her degenerative disk disease. Tr. 17, 706-78. On May 5, 2016, Plaintiff stated her "back pain and radicular leg pain [were] both improved," and she stopped taking oxycodone for pain. Tr. 690. Plaintiff was "clear[ed] for activity as tolerated," ordered to participate in physical therapy, and was encouraged to exercise. Tr. 691, 705.

A June 28, 2016 X-ray of Plaintiff's C-Spine revealed "mild cervical spondylosis, normal alignment, no instability with flexion and extension." Tr. 17, 688. On July 5, 2016, Plaintiff's primary care physician, Dr. Thomas Gutmann, noted she had no cervical spine tenderness upon a musculoskeletal examination. An October 4, 2016 X-ray of Plaintiff's L-Spine revealed "good placement of instrumentation, no hardware fail," and radiculopathy. Tr. 17, 683. On the same date, Plaintiff described her pain as "tolerable," "intermittent," and "much better than before surgery." Tr. 680-81. She denied radicular leg pain. *Id*. The ALJ noted the record contained "very little in terms of objective evidence to support [a radiculopathy] diagnosis." Tr. 17. For

---

[2] In the Court's review of the medical record, on May 5, 2016, Plaintiff reported back pain as a 3 and left leg pain as an 8. Tr. 699-70. She described her back pain as mild and her leg pain as moderate. *Id*. On October 4, 2016 and May 30, 2017, Plaintiff reported her post-operative back pain to be a "2" on the pain scale. Tr. 675, 680.

[3] Despite this testimony, the Court notes that Plaintiff's treatment providers regularly encouraged her to exercise. Tr. 676, 681, 686, 691, 694, 695.

example, an August 12, 2016 treatment note indicated "no evidence of left middle or lower cervical radiculopathy," but Dr. Min Pan wrote "the diagnosis of cervical radiculopathy is still likely despite the negative EMG study." Tr. 769.

The ALJ further cited several post-TILF physical examinations showing "normal musculoskeletal results such as normal muscle tone and sensation, a full range of motion, and no tenderness." Tr. 17, 503, 675-76, 686, 691, 766-67, 771-72. On May 30, 2017, an X-ray of Plaintiff's lumber spine revealed "L5-S1 PEEK interbody graft with bilateral pedicle screw fixation in good position without evidence of hardware complication. Minimal spondylosis otherwise." Tr. 673. On the same date, Plaintiff reported "she [wa]s doing very well" and was "very pleased with the results of her [TILF] surgery." Tr. 17, 675, 680. Treatment notes indicate "she remain[ed] clear for activity as tolerated" and was again encouraged to exercise. Tr. 675-76.

As to Plaintiff's auditory issues, the ALJ considered her August 23, 2016 diagnosis of mild to moderate hearing loss in her right ear, with severe to profound loss at 6,000 to 8,000 Hz. Tr. 17, 657-61. On October 6, 2016, Plaintiff underwent a tympanoplasty with ossicular reconstruction. Tr. 336-41. The medical record does not indicate any complications or issues post-surgery.

The ALJ reviewed records related to Plaintiff's right foot and ankle. On January 24, 2017, Plaintiff presented to her podiatrist with right ankle pain. Tr. 17, 916-19. An ultrasound revealed longitudinal tears of the distal tendon. Tr. 918. She was directed to wear custom foot orthotics which she already owned. *Id.* On March 24, 2017, she underwent the following surgical procedures on her right foot and ankle due to a pes planus deformity that failed conservative therapy: calcaneal osteotomy, cotton osteotomy, gastrocnemius recession, trigonum excision, and exostectomy of tibia. Tr. 17, 361-93. On April 27, 2017, Plaintiff reported her "discomfort

10

and swelling comes and goes depending on how 'active' she is." Tr. 17, 881. Plaintiff stated she did not take pain medication on a daily basis, but was non-weight bearing and sometimes used a knee walker. *Id.* Plaintiff was instructed to "advance weight bearing" and "strengthening." Tr. 883.

On May 23, 2017, Plaintiff reported to her podiatrist that she felt a "little worse" because the weekend before her appointment she tripped in her garage and subsequently two containers dropped on her foot. Tr. 17, 874. Plaintiff admitted she did not always comply in wearing her boot as instructed but was ambulating independently. Tr. 874, 877. Upon a musculoskeletal examination, Plaintiff had some restricted dorsiflexion and inversion and tenderness on palpitation, but her treatment notes indicated she had a "good solid foot with muscle" and "gastroc strength 5/5." Tr. 17, 876. Her treatment was described as "moist heat, ROM/stretching exercise, proprioceptive activities, ice with electrical stimulation, and a home exercise program." Tr. 877. She was noted to be "tolerating this treatment well and had improved in mobility and function." *Id.* On May 30, 2017, a progress note indicated Plaintiff had an antalgic gait favoring her right foot, but she denied radicular pain or numbness. Tr. 17, 675. On June 7, 2017, Plaintiff stated she was "starting to feel less discomfort every day," believed physical therapy was going well despite feeling sore afterwards and admitted to not wearing her surgical shoe. Tr. 871. Upon examination, she exhibited some reduced range of motion, tenderness to palpitation, and 5/5 strength. Tr. 17, 873.

The ALJ also considered Plaintiff's weight, describing her as "overweight and/or obese with a Body Mass Index (BMI) ranging from approximately 29.28 – 33.83." Tr. 18, 344, 350, 461, 470, 503, 658, 680, 685, 766, 918. The ALJ explained "[a]lthough the medical record [did] not associate any significant limitation with the [Plaintiff's] obesity alone, the postural

limitations and some of the exertional limitations in the [RFC] were included taking into account the possible impact of the claimant's obese body habitus on their ability to complete these functions." Tr. 18. Specifically, the ALJ noted her obesity "certainly affected her ability to ambulate to a degree – due to her foot/ankle conditions and spinal disease." *Id.*

 Plaintiff argues the ALJ failed to develop the record fully and fairly because she did not "solicit an opinion from a consultative examiner or a medical expert to provide a medical opinion to determine Plaintiff's physical and mental abilities to function in the workplace." ECF No. 22, at 5. If "there is no medical opinion in evidence," Plaintiff argues the ALJ's decision must be reversed. *Id.* The Court cannot agree.

The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 416.919a(b). "There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

A claimant for social security disability benefits, however, has the responsibility to provide medical evidence demonstrating the existence of an impairment, its severity during the period of disability, and how the impairment affects the claimant's functioning. 20 C.F.R. § 416.912. In other words, the claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC. "[I]t is [the plaintiff's] burden to prove at step four that she cannot perform her past relevant work. At the very least, the claimant's failure to provide medical evidence with this information should not be held against the ALJ when

there *is* medical evidence that supports the ALJ's decision." *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (citations omitted; emphasis original).

"Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). The Commissioner and the claimant's attorney both share the goal of ensuring deserving claimants who apply for benefits receive justice. *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994).

The ALJ's duty is not never-ending, and an ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)).

Plaintiff's argument that the ALJ was required to obtain an opinion from a consultative examiner or a medical expert to provide a medical opinion to determine the RFC, is simply not correct. "There is no requirement, however, that an RFC finding be supported by a specific medical opinion." *Battreal v. Saul*, No. 4:19-CV-03140 SRC, 2021 WL 1143828, at *4 (E.D. Mo. Mar. 25, 2021) (citing *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). The RFC determination does not need to be supported by a "specific medical opinion;" it only needs to be supported by "some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019), and *Hensley*, 829 F.3d at 932).

Plaintiff's contention that a consultative examination was required is also incorrect. "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy*, 648 F.3d at 612 (citing *Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir. 1986)) (emphasis added). Further, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Battreal*, 2021 WL 1143828, at *4 (citing *Haley v. Massanari,* 258 F.3d 742, 749-50 (8th Cir. 2001), and *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford*, 929 F.3d at 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

As summarized above, the ALJ's decision contains a detailed summary of Plaintiff's treatment records in relation to her spine, left foot, and hearing impairments. The ALJ cites to numerous post-surgical follow up visits, physical examinations, and X-ray studies. The underlying medical record in this case is approximately 600 pages for a less than two-year period.[4] Tr. 321-925. The ALJ acknowledged and considered Plaintiff's musculoskeletal conditions, surgeries, and pain as reflected in her treatment records. The ALJ then devised the RFC by limiting Plaintiff to sedentary work, with additional restrictions to accommodate her right foot and ankle pain, back pain, hearing issue, and obesity. Based on the extensiveness of the record as a whole, the Court finds the evidence in the record was sufficient for the ALJ to form her RFC determination. *See Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (An ALJ is

---

[4] The Court acknowledges a portion of the medical record is from outside the relevant period.

permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision).

Plaintiff argues that a notation in her initial disability denial proves her record was not fully developed. State agency consultant Dr. Gwartney wrote in the April 2019 Disability Determination Explanation that Dr. Levitre's records were "insufficient for time period needed." Tr. 82. At the time of Dr. Gwartney's review, the record contained only one treatment note from Dr. Levitre, dated November 2017, which was outside the relevant time period. Tr. 82.

However, the record now shows the ALJ was cognizant there may have been missing records and subsequently asked for and acquired them before issuing her decision. When Plaintiff and her counsel appeared for the November 6, 2019 hearing, the ALJ explicitly asked if any additional records needed to be added to the record. Tr. 30. Plaintiff's attorney only mentioned the need to add migraine treatment records from Dr. Yee Pan. *Id.* Later in the hearing, the ALJ addressed the lack of Dr. Levitre's treatment notes and advised Plaintiff's attorney to "go back and check with that provider" to see if he has any "treatment notes related to her foot pain and surgeries." Tr. 68. On December 2, 2019, Plaintiff supplemented the record with Dr. Levitre's records from January 24, 2017 to June 7, 2017. Tr. 906-25. The ALJ considered and cited to these records in her opinion when she limited Plaintiff to a sedentary exertional level "to account for reduced lifting/carrying and standing/walking given the severe impairments of right foot pes planus and right ankle valgus deformity status-post surgery[.]" Tr 18.

The Court finds Plaintiff's arguments regarding her physical impairments are without merit as the record was fairly and fully developed, and substantial evidence in the record as a whole supports the ALJ's decision. "If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we

may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). The ALJ considered Plaintiff's subjective allegations of pain and the totality of the medical record when determining Plaintiff's residual functional capacity. The ALJ properly found Plaintiff was able to meet the physical demands of sedentary work with certain limitations during the relevant time period.

### B. The ALJ's Consideration of Plaintiff's Mental Impairments

The ALJ found Plaintiff's mental impairments of anxiety and depression to be non-severe. Tr. 14. Specifically, the ALJ determined Plaintiff only had mild limitations in understanding, remembering, or applying information and adapting or managing oneself. Tr. 14. The ALJ also determined she had no limitations in interacting with others and in concentrating, persisting, or maintaining pace. *Id.*

In evaluating Plaintiff's areas of mental functioning, the ALJ considered the hearing testimony in which Plaintiff testified she did not need reminders to take her prescription medication, was able to pay bills, maintained social media, had a good relationship with her husband, used a computer regularly, read, watched television, and cared for her personal needs. Tr. 14-15, 55-56, 60-61.

The ALJ cited three treatment notes from her post-operative back surgery follow up appointments, in which she was described as having good insight and judgment without any indication of memory or mental functioning issues. Tr. 14, 676, 681, 691. The ALJ further noted other records in which she was observed to be calm and cooperative, exhibiting a normal mood and effect, alert, oriented, and in no distress. Tr. 14, 349, 364, 461, 480, 503, 524, 543, 676, 681, 691. A physical exam on August 24, 2016, indicated Plaintiff had a "normal ability to communicate." Tr. 14, 658. Her neurologist described Plaintiff as "normal, alert and oriented x

16

3" with the ability to follow three-step commands. Tr. 14, 766. The ALJ also found the evidence in the record supported symptom control and stability with Prozac and Abilify. Tr. 15, 365, 385, 563, 872, 875, 879, 882, 885, 894, 914. As to Plaintiff's complaints of memory loss, the ALJ found a deficit of objective medical evidence to deem it a severe issue. Tr. 15.

Plaintiff argues the ALJ failed to properly evaluate her depression by failing to obtain mental health records from her psychiatrist Dr. Greg Mattingly; by not obtaining a consultative examination; and by not discussing any possible medication side-effects on her ability to maintain concentration, persistence or pace.

The Court finds the ALJ was not required to seek additional records from Dr. Mattingly or obtain a consultative examination. *See, e.g., Stallings v. Colvin*, No. 6:14-CV-03273-MDH, 2015 WL 1781407, at *3 (W.D. Mo. Apr. 20, 2015) (citing *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005)) ("Eighth Circuit case law reveals that an ALJ can appropriately determine a claimant's RFC without a specific medical opinion so long as there is sufficient medical evidence in the record."). The lack of a medical opinion evaluating the severity and limiting effects of Plaintiff's mental impairments does not, in this case, necessitate a finding that the ALJ failed to develop the record. Although the ALJ has the duty to develop the record, it is the Plaintiff's responsibility to provide medical evidence to show that she is disabled. *Steed v. Astrue*, 524 F.3d at 876; s*ee also* 20 C.F.R. §§ 404.1512, 416.912. Ultimately, Plaintiff bore the burden of proving disability. The ALJ is required to order a consultative examination only if the medical records do not provide sufficient medical evidence to determine whether the claimant is disabled. *Hensley*, 829 F.3d at 932; and *Battreal*, 2021 WL 1143828, at *4. *See also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

17

As to her treatment by Dr. Mattingly, the record consists of his notes from 1998, 2018, and 2019, which are outside the relevant time period. Tr. 662-64, 761-65. Two days prior to the hearing, Plaintiff's attorney sent three pages of Dr. Mattingly's records to the ALJ, which were dated March 4, 1998, May 6, 1998, July 8, 1998, February 7, 2019, and August 6, 2019. Tr. 763-65. These treatment notes are handwritten and somewhat illegible. When Plaintiff and her counsel appeared for a hearing on November 6, 2019, the ALJ explicitly asked if any additional records needed to be added to the record. Tr. 30. Plaintiff's attorney only mentioned the need to add migraine treatment records from Dr. Min Pan. *Id.* No mention was made of a need for additional records from Dr. Mattingly. *See Bowen v. Yukert*, 482 U.S. 137, 146 (1987) (stating it is the plaintiff's burden to produce evidence to support the claim).

Moreover, the record contains sufficient treatment notes for the ALJ to determine Plaintiff's mental impairments of anxiety and depression were non-severe; therefore, there was no need for the ALJ to further develop the record. On August 3, 2016, Plaintiff denied anxiety and depression symptoms to her neurologist, Dr. Min Pan. Tr. 772. On May 31, 2017, Plaintiff reported taking Prozac for depression but denied any anxiety or a depressed mood upon examination. Tr. 767. On March 9, 2016, January 24, 2017, February 20, 2017, March 2, 2017, March 23, 2017, March 29, 2017, April 7, 2017, April 14, 2017, April 20, 2017, April 27, 2017, May 10, 2017, May 23, 2017, and June 7, 2017, Dr. Levitre noted Plaintiff *denied* symptoms of anxiety, depression, irritability, or mood swings. Tr. 872, 875, 882, 888, 891, 984, 907, 909, 914, 917, 921.

As to her memory issues, Plaintiff reported memory loss during an appointment with Dr. Gutmann, her primary care physician, on March 15, 2017. Tr. 500-01. Dr. Gutmann wrote, in relevant part, "Severity is described as mild-moderate. Course of her symptoms over time is

constant. Trouble focusing, remembering. Mild trouble completing tasks. No mood changes. No medication changes." *Id.* Dr. Gutmann noted her November 2015 MRI was "essentially normal." *Id.* On May 31, 2017, Plaintiff appeared to Dr. Min Pan for a follow up appointment regarding memory loss symptoms. Tr. 766. Plaintiff reported "asking the same questions at work" and experiencing a "hard time remembering words." *Id.* Dr. Min Pan assessed Plaintiff with a "*mild cognitive impairment.*" Tr. 767 (emphasis added). There are no other treatment notes within the record in which Plaintiff reported or was treated for memory loss issues.

Although Plaintiff argues the ALJ erred by not discussing any possible medication side effects on her ability to maintain concentration, persistence or pace, she does not inform the Court as to what side effects the ALJ should have considered. In the Court's independent and careful review of the complete medical record, none of Plaintiff's treatment providers discussed any specific serious side effects from her medications, let alone side effects affecting her ability to concentrate or maintain pace.

The record as a whole provides a sufficient basis for the ALJ's decision, and she was not required to further develop the record. *See Hovis v. Colvin*, 2016 WL 4158867, at *12-13 (E.D. Mo. Aug. 5, 2016) (ALJ not required to seek consultative examination and appropriately relied solely on medical records when records demonstrated improvement with conservative treatment); *Peterson v. Colvin*, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) (holding "[e]vidence of Plaintiff's actual daily activities and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities"). Although Plaintiff was taking prescription medication for depression, she consistently denied symptoms of anxiety and depression. Her neurologist indicated she had "mild trouble completing tasks," did not suffer from mood swings, and had a "mild cognitive impairment." Tr. 766-67. Thus, the Court finds the

ALJ's RFC determination was based on some medical evidence, as the law requires. District Courts "may not reverse merely because we would have decided differently, or because substantial evidence supports a contrary outcome." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).

For the aforementioned reasons, the Court finds Plaintiff's arguments to be without merit as the record was fairly and fully developed. Substantial evidence in the record as a whole supports the ALJ's decision, which is also consistent with Social Security Administration Regulations and case law.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Catherine J. McNary's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 26th day of August, 2021.


*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE

20